Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 6133 | **DATE** | 6/12/2000 |
| **CASE TITLE** | Mohr vs. Chicago School Reform Board, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment on counts I, II, and III of the complaint is denied. The court also denies as moot the motions of all parties to strike portions of the other party's statements of material facts. Ruling set for 6/13/00 is vacated. Enter Memorandum Opinion and Order. Pretrial conference set for 12/5/00 at 11:00 a.m. Jury trial set for 1/08/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 1 3 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/12/2000 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LINDA H. MOHR, )
 )
      Plaintiff, )
 )
v. ) No. 97 C 6133
 )
CHICAGO SCHOOL REFORM BOARD OF )
TRUSTEES of the BOARD OF )
EDUCATION of the CITY OF )
CHICAGO, a body politic and )
corporate, ALFRED CLARK, LYNN )
ST. JAMES and MARIE D. )
JERNIGAN, )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Linda Mohr was a white tenured art teacher at Austin High School ("Austin"), in Chicago, Illinois. She had taught there for 17 years, serving as chairperson of the art department from 1988 to 1995, until she was demoted in 1995 in connection with a drastic "remediation" of the school. She filed this race discrimination lawsuit under 42 U.S.C. 2000(e), *et seq.*, and 42 U.S.C. §§ 1981 & 1983, arguing that she was discriminated against because of her race. Although the defendants dispute almost every fact, material or otherwise, they move for summary judgment. I deny the motion.



I.

The background of this profoundly contested case is this.[1] Chicago's schools have a history of racism and are subject to a 1980 consent decree ordering desegregation. Austin was one of the worst performing schools in a city school system that the Illinois state legislature admitted was in crisis. The Chicago School Reform Board of Trustees (the "Board") claims that it established a "remediation team" to review Austin, a process Ms. Mohr argues was a sham and a smoke screen for racial discrimination. According to the Board, the team decided that all teachers at Austin would have to be interviewed for a job and attend a remediation program in the summer of 1995 or they would not be reassigned to Austin in the fall; this policy was announced by Alfred Clark, the new principal

---

[1] Counsel for both plaintiff and defendants have failed to present the complex factual material in a useful way. I do not appreciate having to chase every single claim from conclusory statements in the briefs to the statement of material facts to untabbed (!) records that are not themselves consecutively numbered or otherwise referenced. I should not have to build the case up myself from the ground up.

This sort of unlawyerly approach is a fairly transparent attempt to get around the length limits on briefs, and the next time I encounter it from the Board or the plaintiff's lawyers, I will give serious thought to denying the motions as unargued. The core evidence for the key claims in a case should be *quoted* (with record citations, of course) *in the main briefs*. The parties should also think about which factual claims are really important rather than objecting to every claim made by the other side.

(starting in summer 1995), and Marie Jernigan, Austin's remediation coordinator, both African American. Ms. Mohr testifies that she was told no such thing. She had no interview and attended only about 40% of the remediation classes. She introduces evidence that many teachers, including black teachers who were reassigned to Austin, were not interviewed and/or did not attend all the remediation classes. She testifies that in late August 1995, Mr. Clark told her she would be assigned to Austin for the 1995-96 school year.

Ms. Mohr reported for work on September 1, 1995. She was directed to the school auditorium, where, she says, Mr. Clark, in the presence of the entire faculty, pointed at her and said, "Ms. Mohr, you stay here." The defendants deny that Ms. Mohr was singled out in any way at the meeting. Ms. Mohr says that she and least 13 tenured white teachers and three black teachers were given a form letter, signed by Mr. Clark and Ms. Jernigan, stating: "this teacher's services are no longer needed at Austin" and explaining that this decision was based on the remediation team's recommendation to "turn over 1/3 of the staff to reculture the school." The defendants contend that payroll records show that "approximately" 14 white and six black teachers and administrators were dismissed from Austin for the 1995-96 school year.

Ms. Mohr contends that the decision to dismiss whoever was dismissed was due to Lynn St. James, Chief Education Officer of the Board. According to the defendants, Ms. St. James started September 1, 1995, the date of the dismissal; she had not been employed by the Board from 1993 through August 31, 1995, but had worked as an unpaid volunteer leading the remediation team to which she had made "recommendations," but played no role in selecting teachers to be dismissed. Ms. Mohr says that Ms. St. James started the Chief Officer's job at the beginning of July 1995 and contends that she did in fact make the challenged determination here.

Ms. Mohr testifies that she and the other teachers who were given dismissal letters were surrounded by security officers and escorted from the building under threat of arrest if they attempted to return. She was not permitted to retrieve her belongings from her locker until much later, and when she returned, many items of financial, professional, and sentimental value, amounting to more than $20,000 in losses, were gone. The defendants say that Ms. Mohr's property was removed to storage by her replacement, and that she has not attempted to get it back.

According to Ms. Mohr, she was replaced at Austin by Eva McKinney, a black woman who was--all parties actually agree--only certified to teach home economics. Ms. McKinney was replaced in

October 1995 by Aisha Albakri, also a black woman with less experience and seniority than Ms. Mohr. The defendants admit that Ms. Albakri was paid out of a position number Ms. Mohr formerly held. The defendants contend, however, that Ms. Mohr was replaced by Dennis Zygalo, a white man, who was, they say, the only art teacher at Austin at the start of the 1995-96 school year.

After being dismissed from Austin, Ms. Mohr worked as a substitute teacher at various grade levels and subjects outside of her area of certification, traveling to different schools, sometimes several a day. In January 1996, she began working as a full time art teacher at King High School, where she still works. She lost her position as department chairperson, no longer supervised teachers in art or music, and lost income from a reading class she had taught at Austin. She also says that she lost her tenure at the Board, which the defendants deny. The defendants claim that Ms. Mohr was placed in the Reassigned Teacher's Pool, which, they say, does not constitute a demotion; however, they also admit that assigning a regularly assigned teacher to a substitute teacher position constitutes a demotion.

Ms. Mohr contends that before September 1, 1995, 60% of the teachers assigned to Austin were black, exceeding the percentage of black teachers at all Chicago public schools. On October 1, 1995,

she says, 70% were black, and by 1996, at least 78% of Austin teachers were black. The defendants say that the statistics show that the racial composition of Austin was 60.4% minority in April 1994, 61% minority "at the end of the 1994-95 school year," and 69% minority at the beginning of the 1995-96 school year.

II.

Summary judgment is appropriate when the record, viewed in a light most favorable to the non-moving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Vector-Springfield Properties, Ltd. v. Central Illinois Light Company, Inc.*, 108 F.3d 806, 809 (7th Cir. 1997); Fed. R. Civ. P. 56(c). The non-moving party can defeat the motion through specific evidence that a triable issue of fact remains on issues on which she bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A plaintiff may make out a Title VII case by showing that her employer took adverse employment action because she belonged to a protected class. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999). She may proceed by producing direct evidence or by the "burden shifting" or indirect approach. Direct evidence "in and of itself suggests that someone with managerial authority was

animated by an illegal employment criterion." *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7h Cir. 1999). Ms. Mohr's direct evidence is the remark in the dismissal letter that the Board intended to "turn over 1/3 of the staff to reculture the school." She interprets the term "culture" to mean "racial culture," and reads the statement to say that the defendants thought that the school staff was too white.

The statement is somewhat vague and ambiguous, but evidence can be significant without being dispositive. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 842 (7th Cir. 1996). A direct evidence case can involve "an acknowledgment on the part of the employer of discriminatory intent, or -- as is more usually the case -- . . .circumstantial evidence, e.g., ambiguous statements or suspicious timing." *Marshall v. American Hosp. Assoc.*, 157 F.3d 520, 525 (7th Cir. 1998). The "task of disambiguating ambiguous utterances is for trial, not for summary judgment." *Huff v. UARCO, Inc.*, 122 F.3d 374, 384 (7th Cir. 1997).

In any event, Ms. Mohr's case does not rest on this ambiguous remark alone. She invokes: (1) the dismissal of 14 white and three black teachers at the school and (2) the change in the racial composition of the school over 1994-96. The defendants dispute her

facts, but on a summary judgment motion, I must credit her version if supported by competent evidence, and the factual dispute is merely another genuine issue of material fact for trial.

Ms. Mohr also proceeds under the indirect, burden-shifting approach. Here she must show that she was: (1) in a protected class; (2) qualified and performed her job satisfactorily; (3) subjected to adverse employment action, and (4) less favorably treated than others not in the protected group. *Mills v. Health Care Service Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). The employer must then present a nondiscriminatory reason for the adverse action, which the plaintiff must show is pretextual. *King v. Preferred Technical Group*, 166 F.3d 887, 892-93 (7th Cir. 1999).

Ms. Mohr is in a protected group. She is white, but Title VII protects persons of all races, *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 745 (7th Cir. 1999), and she has presented evidence that the Board is "one of those unusual employers who discriminates against the majority," *Mills*, 171 F.3d at 455, because she contends that the decisionmakers here were black and motivated by a desire to "reculture" the school in a discriminatory way.

The defendants argue that Ms. Mohr was replaced by someone not in the protected group, but only in their statement of material

facts and in their response to her statement of such facts, rather than their own summary judgment brief. It does not matter, however, whether I treat the point as waived or as raising a genuine issue of material fact. The defendants concede that a black teacher was paid from Ms. Mohr's former account number. A reasonable jury might conclude that this teacher was her replacement.

The defendants argue that Ms. Mohr was not subject to adverse employment action, but also admit that assigning a regularly assigned teacher to a substitute position is a demotion. *See Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996) ("[A]dverse job action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well."). It is adverse employment action to be reassigned from the status of a regular teacher who was chairperson of her department to that of a substitute who must go sometimes to several schools a day and teach out of her area; or even to be deprived of the responsible position of department chairperson.

The issue of satisfactory job performance or a nondiscriminatory reason for the adverse action--it can be analyzed either way--turns on the defendants' claim that Ms. Mohr was dismissed from Austin because she failed to follow Mr. Clark's and

Ms. Jernigan's "directive" that interviewing for a job and attendance at the summer program was essential for a teacher to teach at Austin. Ms. Mohr responds, correctly, that no one has testified as to why she in particular was demoted. Several witnesses did testify that it was their understanding that such a directive was in force, but it is striking that no one testified about the reason Ms. Mohr or anyone else was dismissed from Austin.

Moreover, Ms. Mohr comes forward with evidence that many teachers, mostly black, did not participate in the summer remediation program, were not interviewed for assignment to Austin, and were still assigned to Austin for the 1995-96 school year. Ms. Mohr argues the interview issue directly in only in her statement of material facts, but since the defendants do the same thing with the issue of Ms. Mohr's replacement, they can hardly complain; and Ms. Mohr does argue in her brief that this nondiscriminatory reason is a post hoc rationalization. The evidence of satisfactory performance or nondiscriminatory reason may be ambiguous (depending on whether the evidence about the "directive" is admissible), but ambiguous evidence is for the jury to sort out. I deny the Board's motion for summary judgment on Ms. Mohr's Title VII claim.

III.

Ms. Mohr brought her § 1981 action (prohibiting racial discrimination in contracting) through a § 1983 action, as required by *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 735 (1989) (§ 1983 provides the exclusive federal damages remedy for rights guaranteed by § 1981 in a suit against a state actor). The defendants dispute whether *Jett* is still good law after the 1991 Civil Rights Act. *See Nolen v. City of Chicago*, No. 97 C 6608, 1998 WL 111675 (N.D. Ill. Mar. 4. 1998) (unreported opinion) (raising doubts about this). However, I do not agree with the defendants' reading of the statute, and until the Seventh Circuit or the Supreme Court says otherwise, *Jett* remains binding upon me.

A.

A section 1983 violation occurs when the state or one of its agents violates a plaintiff's constitutional rights. *Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991). To make out a § 1983 claim against a municipality, the plaintiff must show that the wrongful act is a policy or practice of the governmental unit. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). A municipality can violate the civil rights of a person because of its policy in virtue of: (1) an

express policy that, when enforced, causes a constitutional deprivation; (2) a permanent and well settled custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994). Ms. Mohr proceeds under (2), arguing that the Board has a custom of assigning teachers because of race, and, as is now evident on the basis of her arguments, (1) a claim that the dismissal letter embodies an expressly discriminatory policy, as well as (3) a claim that the decision was made by someone with ultimate policy-making authority, *viz.* Ms. St. James, Mr. Austin, or Ms. Jernigan.

The Board argues that the only evidence of a custom or policy of assigning teachers on the basis of race is that the Board is bound by a desegregation order under the 1980 consent decree requiring it to take race into account in employment. However, this is both irrelevant and untrue. It is irrelevant because the defendants do not admit that they dismissed Ms. Mohr because she was white, but pursuant to the consent decree; they say, rather, they did not dismiss her because of her race. The claim is untrue because, apart from the evidence of illegal segregation (mainly directed against blacks) leading to the consent decree, there is

the more proximate evidence that the remediation committee at Austin itself (1) disproportionately dismissed white teachers, (2) disproportionately allowed black teachers to stay on despite their not satisfying the committee's own directive about interviewing and remediation classes, and (3) issued an ambiguous but arguably discriminatory letter. That would suffice for a custom or policy, and if ordered by Ms. St. James, Mr. Clark, or Ms. Jernigan, for a decision by someone with ultimate policy-making authority.

The fact that only a single teacher sued does not mean that the alleged discriminatory conduct affected only a single person, contrary to the Board's claim. Ms. Mohr has argued for a pattern or practice affecting many people. The facts are in dispute, but that makes it a jury question. In any event, a § 1983 claim is not a class action, and a municipal violation of a single person's rights is actionable under § 1983 if it is pursuant to an illegal policy or practice. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("[A] single incident of unconstitutional activity is . . . sufficient [for] liability under *Monell* [if there is] . . . . proof that it was caused by a[] . . . municipal policy . . . attribut[able] to a municipal policymaker.").

B.

The individual defendants argue for summary judgment on the § 1983 counts against them on the grounds that (1) they did not have policymaking authority, and (2) they are entitled to qualified immunity. As to their authority, whether Ms. St. James was an employee or a volunteer is disputed, and the Chief Educational Officer certainly had final policymaking authority. Moreover, it is undisputed that Ms. St. James was employed on September 1, 1995, when Ms. Mohr was in fact dismissed, and that might be enough for liability if the decision was racially motivated.

Moreover, Ms. St. James could not insulate herself from liability by making decisions as a "volunteer" in a job she has accepted that would be illegal if she were technically employed in that job. That would support Ms. Mohr's claim that the remediation process was a smokescreen for racial discrimination. A future boss's "mere recommendations" are not like those of the average volunteer. If Ms. St. James had accepted the job and was participating in the remediation process--that is, was doing part of the job--she was a Board employee as a matter of law, whether or not she was technically on the payroll, particularly since an inference might be raised that she was being kept off the payroll to do something no employee could lawfully do.

Mr. Clark and Ms. Jernigan contend that they made no "independent" decision "on their own" to dismiss teachers, including Ms. Mohr. But an "independent" decision is not required for individual § 1983 liability. Individuals who act jointly, in a committee, say, may have such liability, see, e.g., Hill v. Shobe, 93 F.3d 418, 422 (7th Cir. 1996)(discussing conspiracy liability under § 1983), or officials who wanted to violate someone's rights could avoid individual liability by merely conspiring to do so.

The individual defendants claim they are entitled to qualified immunity. Qualified immunity should be granted when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that his action violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

However, any reasonable administrator would know that intentional racial discrimination was illegal. If the individual defendants dismissed Ms. Mohr from Austin because she was white,

and not as part of a legitimate affirmative action plan, they are not entitled to qualified immunity. The individual defendants assert that they acted in good faith, dismissing Ms. Mohr because she failed to be interviewed or attend the remediation summer program, but this contradicts their own deposition testimony, where they said they did not know why she had been dismissed. The credibility problem here is for the jury to resolve.

I DENY the defendants summary judgment on Counts I, II, and III of Ms. Mohr's complaint. I DENY as moot the motions of all parties to strike portions of the other party's statements of material facts.

ENTER ORDER:

Elaine E. Bucklo
United States District Judge

Dated: June /2, 2000

Copies are being mailed to:

Edward R. Theobald
Law Offices of Edward R. Theobald
111 W. Washington Street, #759
Chicago, IL 60602

Attorney for Plaintiff

Taryn Springs, Associate Attorney
Chicago School Reform Board of Trustees
125 S. Clark Street, 7th Fl.
Chicago, IL 60603

Attorney for Defendants