Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 6133 | **DATE** | 8/3/2001 |
| **CASE TITLE** | Mohr vs. Chicago School Reform Board, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions for judgment as a matter of law and for a new trial (141-1 & 141-2) are denied. Defendants' motion concerning their objection raised during the plaintiff's closing argument is also denied. Plaintiff's motion for a permanent injunction (137-1) is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 8/6/01 date docketed | |
| | Notified counsel by telephone. | | | 163 |
| | Docketing to mail notices. | | EB docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG -3 PM 5:58 | 8/3/2001 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

DOCKETED
AUG 0 6 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LINDA H. MOHR, )
)
    Plaintiff, )
)
v. ) No. 97 C 6133
)
CHICAGO SCHOOL REFORM BOARD OF )
TRUSTEES of the BOARD OF )
EDUCATION of the CITY OF )
CHICAGO, a body politic and )
corporate, ALFRED CLARK, LYNN )
ST. JAMES and MARIE D. )
JERNIGAN, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

In 1995, Linda Mohr, a white former art teacher at Austin High School ("Austin"), in Chicago, Illinois, was dismissed from her position as an art teacher and head of department at Austin in connection with a "remediation" of the school. She was also transferred and demoted. She sued under 42 U.S.C. 2000(e), *et seq.*, and 42 U.S.C. §§ 1981 and 1983, and won a jury verdict for race discrimination. For more factual background, see *Mohr v. Chicago Sch. Reform Bd. of Trustees*, 99 F. Supp. 2d 934 (N.D. Ill. 2000). The losing defendants,[1] the Chicago Board of Education (the "Board"), and former Austin principal Alfred Clark, and Marie

---

[1] Defendant Lynn St. James, Superintendent of the Board on the date that Mohr was demoted, was not found liable.

Jernigan, Austin's remediation coordinator, who are both African American, move for judgment as matter of law, or in the alternative, for a new trial. I deny this motion. Ms. Mohr moves for a permanent injunction against retaliation for her lawsuit and judgment. This motion I grant.

I.

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). The standard for judgment as a matter of law "mirrors" that for summary judgment, such that "the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). I ascertain whether there exists "'any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Pope v. Shafer,* 86 F.3d 90, 91 (7th Cir. 1996) (citations omitted). I view the evidence in the light most favorable to Ms. Mohr and draw all reasonable inferences in her favor. *Id.* As the Seventh Circuit has said, "[a]ttacking a jury verdict is a hard row to hoe." *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1043 (7th Cir. 1999). I will disturb the jury verdict only if "no rational jury could have brought in [that] verdict." *Id.*

The defendants argue that the Title VII verdict against the Board, and the §§ 1981 and 1983 verdicts against Clark and Jernigan

-2-

in their individual capacities, are against the weight of the evidence. "In assessing whether there was . . . a reasonable basis after a trial on the merits, I consider whether the totality of the evidence supports a verdict of intentional discrimination." *Sheehan*, 173 F.3d at 1043. Contrary to the defendants' contentions, a *McDonnell Douglas* prima facie case and the burden shifting analysis are irrelevant after trial. *Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 965 (7th Cir. 1999). In any event, this case involved direct evidence as well.

The Board argues that Mohr failed to produce evidence that similarly situated minority teachers were treated better because, although she testified that some such teachers also failed to attend a supposedly required interview, her testimony was "thoroughly impeached." But I cannot so conclude as a matter of law. Our civil justice system is based on the idea that "the jury is well-equipped to evaluate the evidence and use its good 'common sense' to come to a reasoned decision." *Wichmann v. Board of Trustees of S. Ill. Univ.*, 180 F.3d 791, 805 (7th Cir. 1999), *vacated on other grounds by* 528 U.S. 1111 (2000). "Questions of witness credibility are reserved for the jury." *United States v. Woolfolk*, 197 F.3d 900, 904 (7th Cir. 1999). The jury believed Mohr, and disbelieved the Board. The jury might have rationally done so even in a pure swearing contest. Here there was also credible evidence of disproportionately large nonretention of white

teachers as against black ones despite a low level of overall participation in the interviews.

The Board argues to me, as it did to the jury, that Mohr failed to rebut its contention that she was not retained because she failed to interview and apply for a position at Austin. Mohr did, of course, present evidence that this was not the real reason, for example, a letter about "reculturing" the school that might be given a racial interpretation in the context of the disproportionate nonretention of white teachers. The Board offered testimony that race was not a factor in its decision, but the jury obviously did not find its evidence credible. Even if Mohr had not brought forward her own evidence, "a fact-finder does not have to accept unrebutted evidence as correct, but can instead draw his own conclusions from [the] evidence." *Meader v. United States,* 881 F.2d 1056, 1060 (11th Cir. 1989) (citing *Luria Bros. & Co. v. Pielet Bros. Scrap Iron & Metal, Inc.,* 600 F.2d 103, 115 (7th Cir. 1979)) (damages computations contexts).

Arguing that the civil rights verdicts against Clark and Jernigan cannot be supported by the evidence, the defendants argue that Clark and Jernigan were not shown to have the necessary causal connection to Mohr's injury. *See McPhaul v. Board of Comm'rs of Madison Co.,* 226 F.3d 558, 566 (7th Cir. 2000) ("There must be a showing that the official was directly responsible for the improper conduct . . . ."). The argument that they were not is that they

testified that they didn't know her and had never seen her before the trial, and there was no evidence to the contrary. But Mohr offered evidence that Clark singled her out on the first day of school, September 1, 1995, and that Jernigan discussed her removal with her on that day. And again, the jury would not have to believe even unrebutted testimony that it found incredible.

Clark and Jernigan reargue their qualified immunity claims that I rejected in their summary judgment motion. A defendant raising a claim of qualified immunity argues "that, in the circumstances presented, the price of public employment should not include liability for civil damages when the law is not clearly established." *Markham v. White*, 172 F.3d 486, 491 (7th Cir. 1999). There is liability only if the defendants violated clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As I explained in rejecting their previous argument, "any reasonable administrator would know that intentional racial discrimination was illegal." *Mohr*, 99 F. Supp. 2d at 940. Clark and Jernigan say that it was the interview team, not themselves, who decided who was to be retained and who not, and that "the evidence establishes" that the team acted in "good faith" when it decided not to retain Mohr, because she failed to interview and reapply for a job at Austin. This begs the question. I will not usurp the jury's function merely because the defendants are arguing a qualified immunity defense. In addition, the evidence at trial was that Clark and Jernigan claimed

-5-

that they did not know why Mohr was not retained, not that they advised that she be transferred for some nonracial reason. For these reasons the defendants are not entitled to judgment as a matter of law.

Finally, Jernigan and Clark argue that Mohr is not entitled to punitive damages under Illinois law because she did not prove that the defendants acted "willfully or with such gross negligence as to indicate a wanton disregard of the rights of others." *Heldenbrand v. Roadmaster Corp.*, 660 N.E.2d 1354, 1360 (Ill. App. Ct. 1996). The basis for these arguments are the disputed issues, concerning whether the individual defendants knew Mohr, that the jury has resolved in Mohr's favor. The punitive damages awards stand.

II.

The defendants also move for a new trial under Fed. R. Civ. P. 59(a). I can grant a litigant a new trial if, among other reasons, I made errors that were "substantial enough to deny him [or her] a fair trial." *Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994). I bear in mind that "'[c]ivil litigants are entitled to a fair trial, not a perfect one." *Id.*

A.

Defendants argue that I erred in not allowing Clark to give certain testimony. Prior to the start of trial Mohr, concerned that defendants might try to back off clear deposition testimony that Clark did not know why Mohr had lost her job at Austin,

-6-

brought a motion in limine to bar inconsistent testimony. Not knowing what the testimony would be, I denied the motion. At trial, Mohr called Clark as an adverse witness. As Mohr had feared, Clark now said he did know why she had been fired. At sidebar, Clark's attorneys said the retraction was the result of the fact that Clark had not previously remembered Mohr but having seen her at trial, could now testify. He also said he had an absolute right to testify contrary to his deposition testimony. When I indicated that the explanation did not seem to make sense (since if Clark never knew who Mohr was he could hardly have his recollection refreshed by seeing her), and that there seemed to be a lack of foundation for the testimony, Clark made an offer of proof. According to the offer, Clark would testify that he participated in an interview committee that met with various teachers in August, that at the end of the interviews they decided whether to keep the teacher or not, and that if teachers did not interview they were given a letter of termination on the first day of school. Thus, according to the offer of proof, Clark would not have testified, except through impermissible hearsay, that he knew why Mohr was not retained. But at any rate, completely ignored by defendants, Clark the following day actually testified that he did not know why Mohr had been terminated from her position.[2] With

---

[2] Clark's testimony was as follows:
Q: "And you claim not to know why my client was removed from her position at Austin High School on September 1st, 1995, right?"

-7-

respect to the interview process, there was plenty of nonhearsay testimony, which the jury evidently did not believe, that the participation in interviews was not the reason teachers were retained or fired.

B.

The defendants argue, second, that they were denied a fair trial because I allowed Mohr's counsel in closing to argue that the Board would pay all compensatory damages awarded to her. This came about because the defendants insisted on arguing that Clark and Jernigan would suffer financial hardship if they had to pay a judgment, and I warned them, before closing, that this argument would open the door to the fact of indemnification. I cited *Lawson v. Trowbridge,* 153 F.3d 368 (7th Cir. 1998):

> [O]nce the defendants made their financial weakness the centerpiece of their testimony in the damages phase of the trial[, . . . . their direct testimony "opened the door" and the district court should have permitted [the plaintiff] to point to [the] indemnification . . . .

*Id.* at 379. The defendants argue that I have misread *Lawson*, which, according to them, is limited to the circumstances of that case, involving a Wisconsin indemnification statute that requires the public employer to indemnify any damage claim against an individual employee acting within the scope of his or her employment, whether punitive or compensatory, *see Bell v. City of Milwaukee,* 746 F.2d 1205, 1271 (7th Cir. 1984) (Wis. Stat. § 895.46 "applies to all

---

A: "That's not a claim. That's a fact." Tr. 2-28-01 at 188.

-8-

'judgments,' no distinctions being made for compensatory versus punitive damages"); while the Illinois Tort Immunity Act provides that the public employer may not indemnify a an employee for punitive damages. 745 ILCS 10/2-302(d).

However, the Seventh Circuit did not comment on the availability, or lack of it, of indemnity for punitive damages in *Lawson*. In discussing a case arising under Indiana law, the Seventh Circuit has said flatly that a "defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996). Judge Shadur of this court has applied *Lawson* to an Illinois claim, see *Regalado v. City of Chicago*, No. 96 C 3634, 1998 WL 919712, at *1 (N.D. Ill. Dec. 30 1998). And at least one legal scholar has construed *Lawson* absolutely, without any limitation to special features of Wisconsin law. See John R. Williams, *Representing Plaintiffs in Civil Rights Litigation under Section 1983*, 619 PLI/Lit 127, at 555 (1999) ("[O]nce a defendant has opened up the area, by presenting evidence concerning his financial affairs, the plaintiff has an absolute right to introduce evidence that the defendant will be indemnified and the exclusion of such evidence is reversible error.").

The defendants' reasoning in any event makes no sense: why should they be able to plead poverty if they are to be partially indemnified, but not if they would be fully indemnified? "In the

-9-

general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government--not the individual defendants--is footing the bill." *Lawson,* 153 F.3d at 379. But "the rationale for applying the general rule dissolved once the defendants made their financial weakness the centerpiece of their testimony in the damages phase of the trial." *Id.* Because the jury was informed that under Illinois law, the individual defendants themselves would bear the burden of any punitive damages award, there was no danger that this unindemnified award might be inflated, and the indemnified compensatory award was limited by Mohr's actual losses, and the defendant do not argue that these were inflated. Be that as it may, the Seventh Circuit allows in the evidence of indemnification once the defendants plead poverty, even if all damages, including punitive damages, are indemnified.

The defendants argue in response, first, that the jury might have been confused that Clark and Jernigan's "insurance policy" covered all damages assessed against them. But I instructed the jury that the defendants could be indemnified for compensatory damages only, and it is normally presumed that a jury can follow such instructions. *See Francis v. Franklin,* 471 U.S. 307, 324 n.9 (1985) (criminal context). Second, the defendants claim that because the Board never pleaded poverty, nonetheless the jury was given the mistaken impression that higher damages could be assessed

against the Board because its "insurance policy" would cover all compensatory damages against it. However, the Board gives no reason whatsoever that the jury might have gotten this impression; and, as explained, compensatory damages, depend on actual losses. The defendants offer no argument that these were inflated. Third, the defendants argue that the jury was left with the mistaken conclusion that it had to assess punitive damages against Clark and Jernigan to make them pay individually. Of course, I made clear that a damages award was not compulsory. Moreover, the defendants do not explain why the impression of which they complain is "mistaken." Because Clark and Jernigan would be indemnified for compensatory damages, it is true that punitive damages had to be assessed against Clark and Jernigan to make them pay individually.

C.

I briefly comment on several of the defendants' remaining arguments. They argue that they were prejudiced by my failure to rule on the admissibility of their exhibits before trial, they say I did not rule on these until the third day of trial – because, they say, they were unable to prepare adequately their defense when they did not know what documents they would be able to present to the jury. In the first place, of course, no party has a right to a pretrial ruling on exhibits to which there is an objection. In this case, however, according to my reading of the trial transcript on February 26, the first day of trial, I in fact ruled on all of

-11-

defendants' exhibits (to the extent I could of course), on which defendants said they needed a ruling, prior to opening statements. (I had previously ruled on the admissibility of plaintiff's exhibits because I had sufficient information to be able to do so and because since plaintiff puts on her evidence first, her exhibits needed to be ruled on first. The parties had objected to well over 100 of each other's exhibits.) In addition to what appears to be simply a false statement of fact, defendants fail to say how their opening argument was affected or why the purported effects denied them a fair trial.

The defendants also argue that they were prejudiced by my alleged decision to exclude all but two pages of Mohr's diary because the excluded matter was relevant to her emotional distress damages. In the discussion of this exhibit on February 26, 2001, however, I actually ruled that defendants could put in evidence almost all of the pages which they sought to introduce.[3] Furthermore, when the admissibility of this document was discussed, defendants did not argue that the document was relevant to emotional distress. The defendants rather attempted to draw from "the omissions of the plaintiff" certain factual inferences about what happened the day Mohr was dismissed, or admissions she was supposed to have made about who her replacement was or what

---

[3] Defendants' counsel said he was pointing out the "relevant pages." Tr. 2/26/01 at 89.

happened to her personal property at the school. They argued nothing specific about how the evidence of the diary showed that her emotional distress was exaggerated. Even if they have preserved their emotional distress argument, they have not shown that they were denied a fair trial because of my ruling.

The defendants say that it was error not to allow them to take and introduce the videotape testimony of an education professor, Andrew Hargreaves, as to the innocent, nonracial meaning of the word "reculture." Defendants, however, sought the deposition of Professor Hargreaves, in Toronto, Canada, shortly before trial. Plaintiffs not surprisingly objected, among other reasons, that the request was unduly burdensome. In addition, it appeared defendants were really seeking the testimony of Dr. Hargreaves as an expert on the meaning of the word "reculture." They had never disclosed him as an expert, however, as required by the Federal Rules of Civil Procedure. Finally, it was not what Professor Hargreaves meant by the word "reculture" that was at issue. Rather, it was what defendants meant by the word when they used it in plaintiff's termination letter.

Defendants also object that I barred certain payroll records (exhibits 24, 30-34, 36-39, 41, 77, and 109), but, as I explained in my order of September 18, 2000, these records were not disclosed in a timely manner, and therefore were properly excluded. Furthermore, the final pretrial order listed plaintiff's exhibit

103 as one specific page of a payroll register showing Eva McKinney. Defendants did not object to this exhibit at the time they filed their objections to the final pretrial order. It was therefore admitted.

III.

Ms. Mohr moves for a permanent injunction against race discrimination or retaliation against her as a result of this case. Title VII authorizes injunctive relief "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint." 42 U.S.C. § 2000e-5(g)(1); see *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997) ("Once employment discrimination has been shown, . . . district judges have broad discretion to issue injunctions addressed to the proven conduct."). Injunctive relief may be appropriate even where the plaintiff has produced no evidence of discrimination going beyond the particular claimant's case. *Id.* (citing *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir. 1993)). The Seventh Circuit directs me to look "to whether the discriminatory conduct could possibly persist in the future." *Id.* at 1578-79 (citing *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 817 (7th Cir. 1990)).

Arguing that it would not persist, the defendants argue, first, that of the two supervisors responsible for the discrimination, Clark is no longer employed by the Board, and

-14-

Jernigan is retiring this year. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 864 (7th Cir. 2001) (injunctive relief inappropriate in part because responsible supervisors no longer employed); *but see Gurnee Inn*, 914 F.2d at 817 (okay to enjoin future harassment although employer had terminated employment of primary harasser). However, the defendants here have gone out of their way to argue that Clark and Jernigan were not the sole decision makers, but acted together with an interview team. On its own version of the story, then, the Board cannot argue that all the responsible decisionmaker are or will soon be gone, whichever way that cuts.

Second, the Board states that it now has an effective policy against discrimination, adopted in 1997, and Mohr has a grievance procedure in her collective bargaining agreement. But the Board had an antidiscrimination policy, and Mohr a union contract, in 1995, when the discriminatory events occurred.

Finally, the Board says that the unfortunate events here involved an isolated event under a remediation procedure that is no longer utilized.[4] The Board cites *Petit v. City of Chicago*, 31 F.

---

[4] This appears to be untrue. The Chicago Public Schools office of Accountability offers a list of high schools and elementary schools on remediation for FY 2000-2001. Austin is on the list. See http://acct.multi1.cps.k12.il.us/remediationfy01.html (accessed July 17, 2001). If there is a difference between the "method and means used in reassigning teachers" that was used at Austin in 1995 and the subsequent remediation policies that are still in place, the Board has failed to explain what it is. The Seventh Circuit has authorized such inquiries based on web research. *See Austin v. American Assoc. of Neurological Surgeons*, No. 00-4028, 2001 WL 641797, at *3 (7th Cir. June 12, 2001) ("There is an abundance of

Supp. 2d 604, 614 (N.D. Ill. 1998) (request for injunctive relief moot when complained-of exam no longer in use) (summary judgment context). However, a post-trial context is a different matter because discrimination has been proved, and in any event Mohr challenges retaliation and race discrimination, not remediation. Her prayer for injunctive relief is not moot, nor is it inappropriate, particularly when the court in *Petit* emphasized that part of the reason for the denial of injunctive relief was that "a case challenging a particular hiring procedure . . . should not place the judge . . . in the role of interminably overseeing subsequent hiring procedures." *Id.* Mohr's injunction would not put me in that position. Furthermore, Mohr offers an affidavit that the Board has required her to re-interview for her current position at King High School. In the circumstances, that lends support to the argument that she is not dealing with an old practice that the Board no longer uses. The injunction is granted.

I

I DENY the defendants' motions for judgment as a matter of law and for a new trial. I DENY as moot the defendants' motion concerning their objection raised during the plaintiff's closing

---

up-to-date relevant literature easily retrievable from the World Wide Web. There we discover in a cursory search . . . [citing various web pages]."); *Weaver v. Hollywood Casino-Aurora, Inc.*, No. 00-2862, 2001 WL 694719, at *4 (7th Cir. June 21, 2001) ("While the record is silent on this question, outside sources indicate . . . [citing web site].").

argument. I GRANT the plaintiff's motion for a permanent injunction.

ENTER ORDER:

_Elaine E. Bucklo_
United States District Judge

Dated: August 3, 2001